MICHAEL HIGGINS ET AL. *v.* LOU HABERSTRAW.

EQUITABLE ESTOPPEL. *Mortgages. Parol contract. Statute of frauds. Code* 1892, §§ 4230, 4231.

> While a parol agreement between mortgagor and mortgagee, by the terms of which the former is to take possession until his debt is paid from the rents and then restore it to the latter, cannot, under the statute of frauds, be specifically enforced in a proceeding by the mortgagor for an accounting of the rents and to redeem from a foreclosure and purchase by the mortgagee. it may be availed of as an equitable estoppel against the mortgagee's assertion of title and his defense of the statute of limitations.

FROM the chancery court, first district, of Hinds county.
HON. H. C. CONN, Chancellor.

The appellants, Michael Higgins and others, were complainants, and the appellee, Lou Haberstraw, defendant, in the court below. The appellants inherited the property in controversy from their mother, Mrs. Roberts, who died leaving it incumbered by a deed of trust in favor of the appellee, executed in 1878. After the death of their mother, in 1884, the appellants, with the exception of Michael Higgins, filed a bill in the chancery court against appellee for an accounting and adjustment of equities between them. A decree was entered, fixing the amount due and authorizing the trustee to sell the property. While this decree remained unexecuted, appellants being in possession, turned the property over to appellee, as mortgagee in possession, to collect the rents and apply them to the mortgage debt until it was paid, and it was verbally agreed that, when appellee had been fully reimbursed, she was to inform the appellants and the property was to be reconveyed to them and possession delivered. Shortly after this parol agreement, and after appellee had been placed in possession, appellants left the state, relying on this arrangement. In 1887, without notice to appellants, appellee had the property sold under the decree, and the sale was confirmed, and at the bringing of suit she was still in possession and claimed title and refused to account for rents or restore possession to appellants. Shortly before the filing of the present bill, on November 25, 1897, appellants were informed of these facts, and prayed for an accounting and to redeem the property and for decree for any excess of rents, etc., over the debt due to appellee. They charged also that, besides the rents, appellee received $350 from a railroad company on account of damage to the property, and thus that the debt to appellee had been largely overpaid. To this bill a demurrer was filed on the grounds: (1) Statute of frauds and (2) statute of limitations. The demurrer was sustained and the bill dismissed.

*Frank Johnston,* for the appellants.

1. The appellants had the right to rely upon the arrange-

ment for the payment of the mortgage debt, and, in fact, they did rely upon it.    No principle of law is better settled than that which forbids a mortgagee from taking any advantage of a foreclosure in violation of his agreement to postpone the foreclosure or sell the mortgage property.    All of the authorities hold that such an agreement is not within the statute of frauds, especially where the mortgage is a mere security for and incident to the debt.    And they agree that such an agreement, relied upon by the mortgagor, operates as an estoppel against the mortgagee.    *Faxton* v. *Faxton*, 28 Mich., 159–161; 2 Jones on Mortgages (4th ed.), sec. 1189.

Mrs. Haberstraw had no interest or estate in the land.    She did not have even the legal title which was in a trustee.    The mortgage stood simply as an incident to and security for the debt. The extent of her right was to resort to the land for the payment of the debt.    The mortgagee's interest before foreclosure is merely personal estate, and, on his death, passes to his executor or administrator.    15 Am. & Eng. Enc. L., 737, and cases cited in note 2.    By her agreements the appellee parted with no estate or title to the land, but simply postponed the foreclosure of the mortgage and the collection of the mortgage debt and accepted the possession of the property and the rents as the mode of collecting the debt.

It is obvious that this kind of an agreement is not within the statute of frauds.    The appellee is estopped from setting up against the appellants the title acquired at the sale under the mortgage.

The statute of frauds does not come into view in the consideration of this question, for nothing is better settled as elementary law than the doctrine that the highest estates in land may be lost by estoppels *in pais*.    2 Herman on Eq. Est. & Res. Adj., p. 1099, sec. 975; *Dickerson* v. *Colgrove*, 100 U. S., 578; 2 Reed on Statute of Frauds, sec. 744; *Hefner* v. *Vandolah*, 37 Ill., 520–524; *Picard* v. *Sears*, 6 Adol. & El., 469; *Goodman* v. *Boardman*, 53 Vt., 92; *Burke* v. *Grant*,

1 Hun (N. Y.), 551; *Burke* v. *Grant*, 116 Ill., 124, 129, 130.

Moreover, another view is conclusive of the whole question, and that is that the appellants are not seeking to enforce the agreement as such, but are simply asking the court to prevent the appellee from setting up the title fraudulently acquired in violation of the agreement. The attitude of the appellee is that of a mortgagee in possession, and the bill is not for the enforcement or specific performance of a contract within the statute of frauds, but to prevent the appellee from taking advantage of a gross violation of the agreement and understanding.

2. There are several answers to the defense of the statute of limitations set up by the demurrer. This is not a bill to enforce an express trust in land, nor for the specific performance of the parol agreement. The parol agreement has executed itself. It is a bill to redeem the mortgage, and for an account of the rents simply for the purpose of the payment of the mortgage debt, and for the purpose of setting aside the sale under the mortgage.

According to the agreement, none of the appellants were entitled to the possession of the property until the rents had paid the debts, which event occurred only a short time prior to the filing of the bill, which was in November, 1897, so that none of the appellants are barred by the statute of limitation. The minor appellants are not barred in any possible view of the case. And none of the appellants are barred of the right to set the mortgage sale aside, for the reason that it operated against them as a concealed fraud, and the statute only began to run from its discovery. The better doctrine is that the replication of fraud is good in a court of law, while the authorities uniformly hold that a concealed fraud is not within the operation of the statute until its discovery by the party having the right of action, and this doctrine is universally recognized in equity. Angell on Limitations (5th ed.), p. 180, sec. 183.

Conceding for the sake of argument that the two adult appellants are barred by the statute of limitations, I submit to the court that the minors are entitled to redeem the entire mortgage, and cannot be restricted to their undivided interests in the property. "It is a general rule that a mortgage is an entire thing, and must be redeemed entirely, and that the mortgagee cannot be compelled to divide his debt and security." 2 Jones on Mort., sec. 1072.

In a bill by a wife to redeem, who had an inchoate right of dower in the mortgaged premises, the supreme court of Massachusetts said, in *Lamb* v. *Montague*, 112 Mass., 352: "This right is a right to redeem the entire estate included in the mortgage, by the payment of the whole debt upon it." *Merrit* v. *Hosner*,, 2 Gray, 276; *Knowles* v. *Roblin*, 20 Iowa, 101; *Street* v. *Beal*, 16 Iowa, 68; *Douglass* v. *Bishop*, 27 Iowa, 214; *Spurgin* v. *Adamson*, 62 Iowa, 661; *Meacham* v. *Steele*, 93 Ill., 135.

*Calhoon & Green*, for the appellee.

The relation of mortgagor and mortgagee no longer existed after the rendition of the foreclosure decree. The equity of redemption had then been barred. The absolute legal title, divested of all equity, was then in the trustee, Barr, for the purpose of sale. In this aspect of affairs appellants say that Higgins and Mrs. Slaiter, on behalf of themselves and of the minors, jointly made an agreement by parol with Mrs. Haberstraw, whereby she was to enter upon and hold the land and administer it until the rents paid the debt and interest, and she was to do this as mortgagee. Sharply stated, a new mortgage was executed, by parol, whereby appellants, who had neither legal title nor equity of redemption, granted the property to Mrs. Haberstraw, upon condition that she would enter and hold the land, administer the rents and profits for the benefit of the appellants, and apply the rents collected, or that might

be collected, to the payment of the debt and interest evidenced by the decree of foreclosure. In other words, with the debt ascertained by the decree a new relation of mortgagor and mortgagee, trustee, and *cestui que trust* was created. Treating it as a mortgage simply, a mortgagor's interest cannot pass by parol. 3 Reed Stat. Frauds, sec. 1015. An agreement by parol that a former mortgage shall stand for subsequent advances is void. *Ibid.*, sec 1014. Any alteration of a mortgage by parol is void. *Ibid.*, sec. 1013. A contract to mortgage land resting in parol is void. *Ibid.*, 1016. A mortgagee after decree of foreclosure and order of sale is in equity regarded as the owner. *Ibid.*, 1006.

The agreement to enter upon the land and administer the rents and profits is essentially a trust in the land. This very bill proceeds upon the idea that Mrs. Haberstraw was a trustee in possession, and as such chargeable with removal of a part of the trust estate and accountable for the receipts as damages to the freehold. And while the agreement says nothing as to taxes, these are to be allowed as to a trustee. Repairs would also be allowed, though the agreement is silent as to them. In other words, under this agreement the relation of trustee and *cestui que trust* would arise, whereby Mrs. Haberstraw would be bound to manage this property for the benefit of these appellants and apply the rents to the payment of the debt. *Commissioners* v. *Walker*, 6 How. (Miss.), 185–6.

As such a trust, since 1871, it was void if not in writing. Code 1880, §§ 1296, 1297; code 1892, §§ 4230, 4231. So, we insist that the alleged agreement was void. Even if the agreement had been followed by possession, part performance would not make an exception to the statute of frauds. *Fisher* v. *Kuhn*, 54 Miss., 480. No exceptions will be engrafted on the statute of frauds.

2. If the relation of mortgagor and mortgagee under the trust deed continued, and the mortgagee acquired possession and receipts of rent, the bill to redeem would be barred after

ten years from possession, taken in 1885. Code 1880, § 2666; *Tuteur* v. *Brown*, 74 Miss., 774. This bill was filed November 25, 1897, not only ten years after possession, but more than ten years after the sale. Hence, as a bill to redeem, it is barred. The entry was made under a joint contract, made by Higgins and Mrs. Slaitor, on behalf of themselves and the minor heirs. As some were adults when the entry was made, the statute bars all when the adults were barred. *Jordan* v. *McKenzie*, 30 Miss., 32; *Traweek* v. *Kelly*, 60 Miss., 652; *Anding* v. *Davis*, 38 Miss., 574.

The sale is shown to have been made by the trustee, under the decree of court, and he was the agent of both parties to the deed. *McDougal* v. *Peoples' Bank*, 62 Miss., 663; 65 Miss., 525; 66 Miss., 67; *Sevier* v. *Minnis*, 71 Miss., 473. Any right predicated of the receipt of rents at a greater period than six years from the filing of the bill would be barred by the statute of limitations. *Dean* v. *Tucker*, 58 Miss., 488; *Lindenmayer* v. *Gunst*, 70 Miss., 693. Therefore, no complaint can now be made of the rent, if any, received under a parol entry from 1885 to 1887, the time of the sale. All rent prior to the sale is long since barred, and the right, as well as the remedy, was extinguished thereby. *Proctor* v. *Hart*, 72 Miss., 288; code 1880, § 2685; code 1892, § 2755. There was no right in the rents existing in 1887 that was enforceable in 1897, when the bill was filed.

3. Estoppels must be mutual. If, at the time of the sale under the decree, appellee could not have enforced the alleged agreement or mortgage, she was not estopped from disregarding it. This equitable estoppel, relied on as an exception to take the case out of the statute of frauds, is without support in this state. Whatever may be the rule in England and elsewhere, at an early day in this state it was declared, in *Box* v. *Stanford*, 13 Smed. & M., 96, that even fraud in evading a part of the agreement itself—viz., that the contract was to be reduced to writing—would not take the case out of the statute. Says the court: "The doctrine that lets in one equitable exception

opens the door for the whole innumerable series.'' This has been the uniform course of decisions in this state.

Counsel does not cite a single case in Mississippi to support his contention. We call attention of the court to *Vicksburg* v. *Ragsdale*, 54 Miss., 200, to point out that the question there was whether it was competent to show by parol the nonperformance or waiver of a condition subsequent, and the court held that it was. The briefs of the distinguished counsel on both sides in that case do not mention the statute of frauds as being involved.

There are cases where parties have so acted with reference to titles acquired from another, that they were estopped to assert their own titles. But, in every such case, the party asserting the estoppel had a deed or other writing to the land—in other words, had complied with the statute of frauds. *Money* v. *Ricketts*, 62 Miss., 209, and cases therein cited, are an illustration of this. But no case can be found in this state where a party to a parol mortgage of land has ever been permitted to enforce it.

Argued orally by *Frank Johnston*, for appellant, and by *Marcellus Green*, for appellee.

WHITFIELD, J., delivered the opinion of the court.

This is not an effort to specifically enforce the parol agreement. If it were it would, of course, be obnoxious to the statute of frauds. That agreement is, in effect, not to foreclose the trust deed, under the decree, but to adopt a substituted mode of performance, now completed. The agreement is used defensively, as a shield against the assertion of title fraudulently acquired in violation of the agreement and against the right to plead the statute of limitations. The agreement operates as an equitable estoppel to prevent these things, and the appellants then—the sale and the statute of limitations made unavailing by the estoppel—seek affirmatively to redeem,

not by virtue of the agreement, but as heirs of their mother, the land descended to them.    This is clearly the just view and the real effect of the parol agreement.    And, in this view, it is not within the statute of frauds.    It is not using parol evidence to establish the declaration or creation of a trust in any proper sense.    It is, as held in *Lee* v. *Hawks*, 68 Miss., 671, using "parol evidence to prove, not a substituted contract, but the assent of the defendant to a substituted mode of performance, that performance being completed."

The case falls within the principles of *Lee* v. *Hawks*, *supra*, and *Perry* v. *McLain*, 66 Miss., 145, where the court says: "Although the oral agreement to rescind the contract of sale was not such as a court would specifically enforce, it presents a good ground for refusal by the chancery court to specifically enforce the original contract in writing for the sale of the land." We have not looked at the amended bill.

*The demurrer to the original bill is overruled, the decree reversed, and cause remanded with leave to answer in sixty days from the filing of the mandate in the court below.*